UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA L. KEPHART,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:22-cv-00945-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 25). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff presents the following issues:

1. The ALJ did not properly evaluate the evidence of mental impairments, or even account for her own findings of mental limitations, when assessing Ms. Kephart's RFC.
2. The ALJ did not sustainably find that Ms. Kephart could perform her past relevant semi-skilled work.
3. The ALJ failed to comply with the remand orders issued in this case when evaluating the opinion evidence from Dr. Coombs.

(ECF No. 15-1, p. 5) (alterations to capitalization).

1

Having reviewed the record, administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows:

## I. ANALYSIS

### A. Step 2 Finding and RFC

Plaintiff's first issue argues that the (1) ALJ's decision at Step 2—that Plaintiff did not have a severe mental impairment relating to her mood disorder—is not based on substantial evidence and (2) even if the Plaintiff did not have a severe mental impairment, the ALJ erred by failing to address her mental limitations when formulating the RFC.

#### 1. Step 2

Plaintiff argues that the ALJ's conclusion that her mood disorder was not a severe mental impairment is not supported by substantial evidence because (1) evidence contradicted the ALJ's findings that medication controlled her symptoms and (2) the ALJ failed to account for all the findings of psychological consultative examiner Dr. Stenbeck, whose opinion the ALJ deemed persuasive. (ECF No. 15-1, p. 18-21). Defendant counters that (1) the ALJ provided other reasons, which Plaintiff does not challenge, that show she had no severe mental impairment; (2) the evidence supports the ALJ's conclusion that medication controlled her symptoms, and (3) the ALJ properly accounted for Dr. Stenbeck's opinion, which ultimately concluded that Plaintiff had only mild mental limitations. (ECF No. 17, pp. 7-11).

If a claimant has a medically determinable impairment (MDI), the ALJ must determine "whether [the] impairment(s) is severe," which is referred to as Step Two. 20 C.F.R. § 404.1521. A "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The "ability to do basic work activities," in turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). In evaluating mental impairments, the ALJ considers four broad function areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).

The Ninth Circuit has provided the following guidance regarding whether medically

determinable impairments are severe under Step Two:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." [*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985).

*Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005). A Step 2 finding must be supported by substantial evidence, which "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 686.

Regarding Plaintiff's mood disorder, the ALJ provided the following reasoning for concluding that it was not a severe impairment:

> The first functional area is understanding, remembering, or applying information. The claimant alleged low energy, motivation and mood (Ex. 9F/2). At times, the claimant presented as anxious or depressed in the setting of chronic spinal symptoms (*e.g.*, Ex. 9F/5). At other times, the claimant reported a good mood despite her chronic back pain (*e.g.*, Exs. 4F/6 and 27F/6/30). Overall, her mental status examinations were unremarkable and documented normal affect, normal thought contact and intact cognition (Exs. 4F/15/47/52, 8F/3, 9F/2, 12F/13, 15F/3 and 27F/34). The claimant's treatment records showed no evidence of significantly impaired memory, understanding or cognition. During the internal medicine consultative examination, the claimant recalled 3/3 words immediately and 2/3 words in five minutes (Ex. 8F/4). During the psychological examination, the claimant demonstrated intact intelligence, adequate fund of knowledge, intact abstract thinking, and intact, linear and logical thought processes (Ex. 9F/5). Further, the claimant's mental symptoms improved with psychotropic medication management, such as fluoxetine (*e.g.*, Ex. 12F/6). Based on the claimant's generally normal memory and intact cognition, I find the claimant has a mild limitation in this area of mental functioning.
>
> The next functional area is interacting with others. The claimant reported getting anxious in public places and becoming easily flustered and upset (Ex. 9F/2). At times, the claimant presented as anxious or depressed in the setting of chronic spinal symptoms (*e.g.*, Ex. 9F/5). At other times, the claimant reported a good mood despite persistent pain symptoms (*e.g.*, Exs. 4F/6 and 27F/6/30). Her mental status examinations generally documented normal affect, normal speech, cooperative behavior and calm demeanor (Exs. 4F/15/47/52, 8F/3, 9F/2, 12F/13, 15F/3 and 27F/34). During the psychological examination, the claimant presented in a friendly manner and exhibited good eye contact, normal facial expression and

appropriate behavior (Ex. 9F/5). Further, the claimant's mental symptoms improved with psychotropic medication management, such as fluoxetine (*e.g.*, Ex. 12F/6). Based on the claimant's generally cooperative behavior, normal affect and calm demeanor, I find the claimant has a mild limitation in this area of mental functioning.

The third functional area is concentrating, persisting, or maintaining pace. The claimant alleged low energy, motivation and mood (Ex. 9F/2). At times, the claimant presented as anxious or depressed in the setting of chronic spinal symptoms (*e.g.*, Ex. 9F/5). At other times, the claimant reported a good mood despite her chronic back pain (*e.g.*, Exs. 4F/6 and 27F/6/30). Her mental status examinations generally documented normal affect, normal speech, full orientation and normal thought processes (Exs. 4F/15/47/52, 8F/3, 9F/2, 12F/13, 15F/3 and 27F/34). There was no evidence of significantly impaired concentration and/or attention. During the psychological examination, the claimant exhibited adequate attention, good concentration, and intact, linear and logical thought processes (Ex. 9F/5). Based on the claimant's adequate attention and good concentration, I find the claimant has a mild limitation in this area of mental functioning.

The fourth functional area is adapting or managing oneself. The claimant alleged low energy, motivation and mood (Ex. 9F/2). At times, the claimant presented as anxious or depressed in the setting of chronic spinal symptoms (*e.g.*, Ex. 9F/5). At other times, the claimant reported a good mood despite her chronic back pain (*e.g.*, Exs. 4F/6 and 27F/6/30). Her mental status examinations generally documented normal affect, normal speech, cooperative behavior, good grooming, calm demeanor and normal thought processes (Exs. 4F/15/47/52, 8F/3, 9F/2, 12F/13, 15F/3 and 27F/34). During the psychological examination, the claimant presented in a friendly manner and exhibited good eye contact, normal facial expression, intact judgment, intact insight and unremarkable thought content (Ex. 9F/5). Based on the claimant's lack of significant adaptive deficits, I find the claimant has a mild limitation in this area of mental functioning.

(A.R. 1793-94).

Additionally, the ALJ relied on the findings of three physicians—including Dr. Stenbeck—to conclude that Plaintiff's mood disorder causes no more than mild limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities; thus, it was nonsevere. (A.R. 1794) (citing 20 C.F.R. § 404.1520a(d)(1), which provides as follows: "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1522).").

As a threshold matter, Defendant argues that Plaintiff's Step 2 challenge fails because Plaintiff does not address the bulk of the ALJ's reasons for deeming her mood disorder nonsevere. (ECF No. 17, p. 9). The Court agrees. Importantly, even if Plaintiff established that some of the ALJ's reasons were not supported by substantial evidence, such error would be "harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal citation and quotation marks omitted). Here, the ALJ's reliance on (1) unremarkable mental health examinations; (2) the lack of supporting evidence of mental limitations; and (3) doctors who found Plaintiff's mental impairments nonsevere provide substantial evidence for the Step 2 decision.

Additionally, Plaintiff's challenge to the ALJ's other reasons fails. First, Plaintiff argues that, contrary to the ALJ's determination, her medication did not control her symptoms, citing a medical record where Plaintiff reported that her "fluoxetine at 20mg daily is not holding her" and Plaintiff appeared to be "under a lot more anxiety with a court appearance coming." (ECF No. 15-1, p. 19) (citing A.R. 2098). Under the substantial evidence standard, the Court must "uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation" and draw reasonable inferences in support of the ALJ's findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Here, a rational interpretation of the record supports the ALJ's decision. Notably, Plaintiff's treatment provider did not take her off the medication, but simply increased the dosage to see if it would be more effective. (A.R. 2098). And, as the ALJ noted, another record indicated that this medication helped Plaintiff, at least at times. (A.R. 1793) (citing A.R. 530 - "The patient feels that she is better, less anxious and seems a little more hopeful that fluoxetine has been added."). Moreover, the record indicates that Plaintiff's upcoming court appearance placed her "under a lot more anxiety," meaning that her medication was likely less effective at this particularly stressful time as opposed to ineffective most of the time.

Plaintiff next argues that the ALJ did not properly evaluate Dr. Stenbeck's opinion. (ECF No. 15-1, p. 20). Specifically, Plaintiff argues that, despite finding Dr. Stenbeck's opinion persuasive, the ALJ failed to consider certain portions of the opinion—most notably, that Plaintiff

1    symptoms are "likely to be exacerbated in a stressful work environment." (A.R. 511). But as
2    Defendant points out, despite this notation, Dr. Stenbeck assessed Plaintiff as being only "mildly
3    limited due to mood symptoms and limited coping abilities." (A.R. 511). Moreover, all of Dr.
4    Stenbeck's findings regarding Plaintiff's various work-related abilities concluded that she was
5    either "not significantly limited" or only "mildly limited." (A.R. 510-11). Thus, there is nothing
6    to show that any of Dr. Stenbeck's additional commentary—like Plaintiff's symptoms being
7    exacerbated in a stressful environment—made her more than mildly limited in any functional
8    area.

9    Because the record rationally supports the ALJ's decision that Plaintiff's mood disorder is
10   nonsevere, it must be upheld.

### 2. RFC

12   Plaintiff next argues that, even if there was no error at Step 2, the ALJ improperly failed to
13   account for her mental limitations in formulating the RFC because the ALJ failed to address her
14   limitations in any meaningfully way. (ECF No. 15-1, p. 21). Because this argument ties in with
15   Plaintiff's next issue—that the ALJ's failure to include mental limitations in the RFC renders the
16   ALJ's finding that Plaintiff could perform her past work as a telephone solicitor unsupported by
17   substantial evidence—the Court considers both issues together. (*Id.* at 32). Defendant argues that
18   the ALJ reasonably chose not to include mental limitations in the RFC and that Plaintiff fails to
19   specify what limitations should have been included so as to establish harmful error. (ECF No. 17,
20   pp. 12-13).

21   A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20
22   C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,
23   § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the
24   capacity for sustained performance of the physical-mental requirements of jobs"). "In
25   determining a claimant's RFC, an ALJ must consider all relevant evidence in the record,
26   including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain,
27   that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec.*
28   *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). An

ALJ's RFC determination must be "supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

"Once the ALJ determines the claimant's RFC, he then compares these limitations with the job duties of the claimants previous work." *Sazo v. Colvin*, No. EDCV 15-01078 SS, 2016 WL 447797, at *5 (C.D. Cal. Feb. 4, 2016). If the ALJ's RFC is incomplete, the subsequent ALJ's determination that a plaintiff could perform past relevant work based on the RFC may be unsupported by substantial evidence. *See id.* at 6 ("The ALJ's step four determination that Plaintiff can perform her past relevant work is based on an incomplete RFC that failed to consider Plaintiff's visual impairments and therefore is unsupported by substantial evidence.").

As for the differences between Step 2 and the RFC finding, the Ninth Circuit has observed:

> Step two is merely a threshold determination meant to screen out weak claims. *Bowen v. Yuckert*, 482 U.S. 137, 146–47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC therefore should be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

Here, the ALJ formulated the following RFC for Plaintiff:

> I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can stand or walk two hours in an eight-hour workday and sit more than six hours in an eight-hour workday. She can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch or crawl. She can occasionally reach overhead. She can have no exposure to unprotected heights or dangerous moving machinery. She can use a cane as needed for standing or walking.

(A.R. 1795-96).

Plaintiff argues that "the ALJ actually failed to meaningfully address [her] mental limitations during the residual functional capacity assessment." (ECF No. 15-1, p. 21). Pointing to the ALJ's discussion from Step 2, Defendant argues that "the ALJ reasonably did not include any

mental limitations in the RFC," and in any event, "Plaintiff does not argue with any specificity that the evidence suggests any particular mental limitations that the ALJ did not consider" so as to establish harmful error. (ECF No. 17, p. 12).

Ultimately, because the Court concludes that any error here would be harmless, it need not address whether the ALJ failed to adequately address Plaintiff's mental limitations apart from the Step 2 discussion in formulating the RFC. As the Ninth Circuit has concluded, "harmless error applies in the Social Security context," *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006), with the burden of showing error falling on Plaintiff here, *see Molina*, 674 F.3d at 1111.

Here, although the ALJ did not address mental limitations in connection with the RFC, the ALJ's discussion in connection with Step 2 provides a reasonable understanding of the ALJ's opinion regarding those limitations. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (noting that an ALJ decision will be upheld where the underlying reasoning can reasonably be discerned). As discussed above, the ALJ found mostly normally mental status examinations and deemed persuasive the findings of medical professionals finding only mild limitations. Notably, Plaintiff does not argue that any specific additional limitations would follow from such reasoning.

Moreover, while Plaintiff generally indicates that mental limitations should have been included in the RFC, she does not specify what those specific limitations should have been, why they should have been included based on the record evidence, and how such limitations would have precluded her from her past work. While Plaintiff at one point states that "the vocational witness at the first hearing testified that the job at issue could not be performed if Ms. Kephart was limited to simple, repetitive tasks," the ALJ did not make any findings in its Step 2 analysis that would support such limitations. Moreover, the medical opinions relied on in the ALJ's Step 2 analysis of mental impairments also did not limit Plaintiff to simple, repetitive tasks.

For these reasons, the Court cannot find harmful error in the ALJ's RFC formulation or determination that Plaintiff is capable of performing her past work as a telephone solicitor. *See Alexander v. Saul*, No. 1:19-CV-01208-SKO, 2021 WL 929615, at *11 (E.D. Cal. Mar. 11, 2021)

(finding harmless error where a plaintiff did "not identify what portion of her testimony the ALJ should have credited or what additional limitations should have been included in her mental RFC, nor [did] she explain how the ALJ's mental RFC determination is inconsistent with her testimony").

### B.  Compliance with the Remand Order

Some brief background is needed before addressing Plaintiff's remaining issue. This is Plaintiff's second complaint regarding the denial of benefits. Her first complaint was filed in 1:20-cv-516-BAM, which resulted in the presiding Judge approving the parties' voluntary stipulation to remand the case under Sentence Four of 42 U.S.C. § 405(g). (ECF No. 21 of 1:20-cv-516-BAM). The remand order reflected the parties' agreement that the Commissioner would conduct necessary further proceedings and issue a new decision on remand.

On remand, the Appeals Council vacated the ALJ's decision and remanded with instructions to address certain issues. Pertinent here, the order directed the ALJ to properly evaluate the supportability and consistency factors, after considering certain evidence, in evaluating the opinion of Dr. Jack Coombs. (A.R. 1866); 20 C.F.R. §§ 404.1520c(b)(2) (listing supportability and consistency factors for evaluating medical opinions for claims filed on or after March 27, 2017).

> With respect to supportability, the Administrative Law Judge concluded that there were inaccuracies regarding Dr. Coombs's conclusions that the claimant experiences impaired appetite and weight change and that the claimant can only sit for five minutes at a time without interruption or changing positions (Decision, page 11). However, the Administrative Law Judge did not consider the factor of supportability with respect to the remainder of Dr. Coombs's opinion. For example, Dr. Coombs also opined that the claimant has significant limitations with regard to her ability to lift and carry, stand and walk, perform postural activities, manipulate, tolerate environmental conditions, and sustain work without time off-task or absenteeism (Exhibit 10F, pages 2-3). Further, the Administrative Law Judge reasoned that the extreme limitations contained in Dr. Coombs's opinion lack explanation as to why the claimant is so limited (Decision, page 11). However, Dr. Coombs indicated that he relied on positive clinical signs in rendering his opinion, including reduced range of motion, abnormal gait, muscle spasm, swelling, tenderness, and impaired sleep (Exhibit 10F, page 2). The Administrative Law Judge did not consider these findings in evaluating the supportability of Dr. Coombs's opinion.

> With respect to consistency, the Administrative Law Judge concluded that the limitations set forth in Dr. Coombs's opinion are not supported by the overall evidence (Decision, page 11). However, the Administrative Law Judge did not provide any further rationale or citation to the record in support of this conclusion. Notably, treatment notes reflect that Dr. Coombs observed marked limited motion laterally to the neck and straight leg raising referring pain to the low back bilaterally (Exhibits 4F, page 10; and 11F, page 5). Dr. Coombs further observed that the claimant was uncomfortable sitting and moved to alleviate her pain, walked flexed over due to pain, and looked a little bit unstable getting up from a seated position (Exhibits 4F, page 15; 11F, page 9; and 15F, page 3). Further, in December 2018, Dr. Coombs observed that the claimant "is now needing a walker to get around" (Exhibit 15F, page 53). Other medical records reveal positive clinical abnormalities, including tenderness, positive straight leg raise tests, atrophy, limited range of motion, decreased sensation, limping gait, and an inability to do heel and toe walking (Exhibits 1F, pages 3 and 5; 4F, pages 44, 130, and 136; and 8F, page 4). However, the Administrative Law Judge did not consider this evidence in evaluating the consistency of Dr. Coombs's opinion. Further evaluation of the medical source opinions and prior administrative medical findings is therefore warranted.

(A.R. 1867).

After the instant adverse decision, Plaintiff appealed, alleging, among other things, that the ALJ did not comply with these instructions. (A.R. 1778). However, the Appeals Council rejected this argument.

Now before this Court, Plaintiff argues that the ALJ did not fully comply with the Appeals Council's remand order and argues that such constitutes reversible error. (ECF No. 15-1, p. 22). Defendant argues that ALJ complied with the remand order. (ECF No. 17, p. 13). Accordingly, the Court now considers the ALJ's discussion of Dr. Coombs's opinion:

> Jack Coombs, M.D., the claimant's treating physician, submitted a medical source statement dated August 2018 (Ex. 10F). Dr. Coombs opined the claimant can lift/carry up to five pounds occasionally, stand/walk up to ten minutes at one time for a total of one hour in an eight-hour workday, and sit for five minutes at one time for a total of two hours in an eight-hour workday (*Id.*). Dr. Coombs further opined the claimant must change positions every five minutes (*Id.*). He opined the claimant can never bend, climb, balance, stoop, crouch, kneel, crawl or finger, and occasionally reach, handle, feel, push, pull, flex her neck/head forward, tilt her head back, and turn neck/head from side-to-side (*Id.*). He opined the claimant is limited in her ability to work around heights, temperature extremes and humidity (*Id.*). Dr. Coombs opined the claimant needs one-hour breaks after every 30 minutes (*Id.*). Dr. Coombs opined the claimant can maintain attention and concentration more than 50% of the time due to pain and will be absent more than

> four workdays per month (*Id.*). In supporting his medical opinion, Dr. Coombs relied on the claimant's diagnoses of spinal stenosis of the lumbar spine and degenerative disc disease of the cervical spine (*Id.*). He also noted clinical signs, including reduced range of motion, abnormal gait, muscle spasm, weight change, swelling, tenderness, impaired sleep and impaired appetite (*Id.*). In an updated medical source statement dated July 2021, Dr. Coombs confirmed his prior medical opinion (Ex. 28F). In supporting this opinion, Dr. Coombs relied on the claimant's self reports of constant neuropathic pain and stinging in her feet as well as the claimant's weight gain of 50 pounds due to inactivity (*Id.*). For the same reasons discussed regarding Dr. Williams' prior administrative finding, I find Dr. Coombs' medical opinion inconsistent. Further, Dr. Coombs' opinion is inconsistent with his own clinical observations. For example, while the claimant had positive straight leg raises, she also had good strength and showed no evidence of swelling (*e.g.*, Exs. 4F/10 and 5F). Dr. Coombs' opinions did not consider the claimant's positive response to medication management and lumbar surgery, which are clearly documented in his own treatment records (*e.g.*, Exs. 26F and 27F). Finally, Dr. Coombs' opinion dated July 2021 relies on the claimant's self-reports of neuropathic pain; however, clinical examinations documented infrequently decreased sensation in the left lower extremity and the claimant engaged in activities of daily living inconsistent with a disabling level of neuropathic pain in her feet, such as driving a car and being independent with her activities of daily living (*Id.*). Based on the foregoing, I find Dr. Coombs' medical opinion unpersuasive.

(A.R. 1801-02). Elsewhere, in the decision, the ALJ further discussed evidence relating to Plaintiff's treatment with Dr. Coombs.

Upon review, the Court does not conclude that the ALJ failed to comply with the Appeals Council's remand order. Importantly, that order directed the ALJ to *consider* certain findings in conjunction with evaluating the opinion for supportability and consistency—the order did not direct the ALJ to reach any conclusion as to the persuasiveness of the opinion. Here, the ALJ sufficiently considered Dr. Coombs opinion as directed, *e.g.,* the ALJ recognized that Dr. Coombs relied on clinical signs, including reduced range of motion, abnormal gait, muscle spasm, weight change, swelling, tenderness, impaired sleep and impaired appetite.

Moreover, even if the ALJ did not comply in all respects with the remand order, that does not necessarily warrant reversal as "[t]he ALJ's errors are relevant only as they affect that analysis on the merits" because "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). On this point, Plaintiff

argues that the ALJ should have found Dr. Coombs's opinion persuasive. However, the ALJ's rejection of the opinion is sufficiently supported by substantial evidence, *e.g.*, the ALJ's citation to normal examination findings, positive response to treatment, and Plaintiff's daily activities. Moreover, in formulating the RFC for Plaintiff's physical limitations, the ALJ relied on three other doctors, adopting less restrictive limitations than Dr. Coombs's opined based on their recommendations. (A.R. 1800-01). While Plaintiff argues that the record could support a different conclusion as to the evidence, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).

Accordingly, the Court concludes that the ALJ complied with the Appeals Council's remand order and the ALJ's review of Dr. Coomb's opinion was supported by substantial evidence after consideration of the supportability and consistency factors.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **May 16, 2023**    /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE